Mr. Ide? Ide, excuse me. You may proceed, sir. Thank you. My name is Peter J. Ide. I'm here representing William Cain, the petitioner, and I'd like to just clear up a couple of things that occurred to me as I was preparing for this event today. Your decision, this court's decision in Watson, has two very important things that you may want to review. Number one is it clearly says the hazard of the job involved is probative as to whether or not the employee is classified as a primary or secondary recipient of the special retirement benefits. It also says that the fitness test is probative, and in both situations the record clearly reflects that the hazard that Mr. Cain faces is huge, and he takes a fitness test, fitness program. Mr. Ide, did you raise, did you handle this below? Part of it. Did you raise with the board, MSPB, did you raise with them the question of whether the position of firefighter, what is it? Inspector. Inspector. Did you raise its FPI? I forget just what all those words mean. Did you raise below the question of whether an FPI is a primary firefighter position in and of itself? Yes, we did raise that. Yes, we maintained that it was primary rather than secondary. The Navy had said up until this case arose that it was secondary, but we said that there's so much time spent by Mr. Cain and the other inspectors doing primary work, primary firefighting work, that the inspector job at the Dahlgren facility is in fact primary, not just secondary. Is one of the requirements of that fire protection inspector to be a firefighter? Apparently, according to Judge Robinson, it's not. Is it listed anywhere in the specs for the job? I don't believe so, Your Honor, but the facts are simple that Mr. Cain is required to spend 24 hours a week on duty as a primary firefighter, even though his classification is inspector. He can't be a firefighter. As you know, in this area, the labels are sometimes very important. I'm sure that counsel is going to stand up in a minute and tell us that an inspector is not a firefighter, and so that's your problem. How would you tell us that it is and that that's one of the job specifications? It may not be in the classification specification for inspector. However, the record is clear. Mr. Cain and the other inspectors at Dahlgren are required to spend 24 hours a week as primary firefighters. Is that in the appendix somewhere? Is that in the record? That's in our brief, and I believe it's in the record as well. Well, I understood, and I can't remember where it is now, but I thought one of the things about this inspector position was that at least 5% of the time was firefighter duties. That's what the specs say, the actual time spent by Mr. Cain and the other inspectors, and I believe this is in the record. No, but let's be minimalist here. Let's even take this 5%, assuming that that's right. I guess to the extent the dispute is whether or not you had to have had real firefighting experience to qualify, that seems to be what the AJ was talking about. Do they offer training then for the FPIs? It seems that if a job requires 5% firefighting duties, there's an inherent assumption there that the person who gets the job would have had some experience firefighting, unless, of course, they provide them a whole new training program, so that's what I meant. I think that would be a requirement. Well, as far as you know, was there training offered to your client? I do not know the answer to that question, Your Honor. You know that the board has, over time, shifted its focus from what these firefighters or police actually do on a day-to-day basis to position descriptions. I understand that. You understand that. But this court has consistently said that the actual duties are a factor. And all of the decisions that I've read from this court and other circuits as well have all said that the actual duties are a factor, although the position description is certainly a major factor, and I believe that's what Judge Robinson hit on primarily, but the actual duties are a factor, and the actual duties here in the record… What are the findings of the board as to what the inspector position entails and what the record actually shows on those duties? I'm not sure I understand your question. Well, I'm hitting at the point that the board has found that the position doesn't fight fires or describe itself as fighting fires, and so I'm struggling to deal with the board's finding here. It's kind of Kafkaesque, if you will. It's my problem exactly, because it's clear that I don't think the parties disagree that there's at least 5%, if not more, of the inspector's time spent actively fighting fires, doing primary firefighter work. That doesn't make the position primary. That's correct. But if it goes… 24 hours a week is 40% of the inspector's time spent as a primary firefighter, not an inspector. Now, there are other occasions during the week where the inspectors are called upon to assist in the control of fires or answering emergency calls as they would if they were a primary firefighter. And our position is, and we believe the record establishes that Mr. Kane and the other inspectors at Dahlgren spend 50% or more of their time… Yeah, but the Navy found against that. The Navy found this wasn't a primary position. They knocked you out on that. But then we get to the board and they shifted. They said it's not a secondary. Correct. Which focuses us primarily, as I understand it, on what Judge Plager was talking about. We've got to look at that job and exactly what it requires and what it does, and the board found against you on that. So you've got to tell me… That's why we're here. Yeah, that's why we're here. You've got to tell me what their mistake is. What is the mistake they made in defining that position as not requiring firefighting either in substance or in specific description? In fact, Mr. Kane and the other inspectors are required to spend 24 hours… How required? What does that mean? That's part of their schedule. Who gives them that schedule? The inspectors' schedule by the fire command people at Dauberin have set schedules where the inspectors spend at least 24 hours a week on duty at the fire station ready to man the fire trucks that go out and answer the emergency calls. Is that temporary, though? If that's temporary because of firefighter shortages, we have trouble taking it into consideration. It's been going on for years and years. That's not the question. The question is whether it's temporary or is it the assignment of that job. You understand the distinction, which is important in the law. Yes, sir. It's the assignment of that job at Dauberin. It may not be the assignment of that job at other naval facilities. And how long has Mr. Kane been in Dauberin? 15 years. So from the entire 15-year period, schedules every week, the inspectors have 24 hours dedicated to… If not all of it, most of it. If not all of it, what does that mean? I'm not certain if it's all of the 15 years, but I believe it's all 15 years. But I want to say absolutely. But I'm sure counsel's going to tell us that's temporary, ephemeral types of duties that our case law tells us we can't count. What else have we got? I don't believe the case law from this circuit says you can't count that. The cases from this circuit clearly say you should consider the actual duties and activities of the individuals in determining whether or not… Yeah, the actual duties may be different from the temporary assignments. That's the problem. Now, the question is, is a 15-year assignment temporary? That's… I can't imagine that it would be, but perhaps the Navy claims it is. But the United States government does that sort of thing. They send people on temporary duty for 3 or 4 years or 15. Can I shift your focus just quickly to another different issue, which is the… Assuming we're left at a primary-secondary divide and you're short on the primary time, then you've raised the issue of whether or not his volunteer status should be used to enhance the primary time for up to 3 years. Is there any case law on that issue? On whether or not it enhances the primary time? Yeah. I don't believe so. Whether volunteer firefighting service can be used to establish… I don't believe so, Your Honor. I know it can be used to enhance the secondary status, but I'm not sure that it could be used. I don't think there's a case where it's used to enhance the primary status. So, but no cases that you know of have rejected that issue. Was that volunteer service performed prior to the time he entered into federal service? Yes, sir. Yes, Your Honor. Was it performed during or after he had entered into federal service? Before, during, and to date. That volunteer service continues. Yes, Your Honor. Okay. My argument is not to get in the weeds with regard to primary and secondary, but it's rather to get into the weeds with regard to the equitable estoppel argument. And I believe the cases clearly say that this court can apply equitable estoppel to the Navy's effort to deny the benefits to Mr. Kane. The primary case is Tefel v. Reno out of the 11th Circuit, where they run through the requirements for applying equitable estoppel, words and actions. And you're going to say this is the argument that he relied on their assertion that he was okay on retirement? Absolutely. Up until, even through 2006 when he requested an estimate of his retirement benefits and the Navy said he had the firefighter retirement program, through 2006 he was counted under early retirement at the enhanced pension level. But is there any evidence in the record in terms of any detrimental reliance on his part on that assumption? I believe there is, Your Honor. I can't answer that yes or no. Thank you, Mr. Wrighty. You could save the rest of this time for rebuttal if you'd like. Would you like that? Well, let's hear what Mr. Woodrow has to say. Well, let's save it for you and you can use it if you'd like. Thank you, Your Honor. Thank you very much. Mr. Woodrow. Mr. Woodrow, I need a little help right at the outset in order to get my head around exactly what we're dealing with here. Certainly, Your Honor. As I read the law, there is a distinction made between primary firefighting and secondary activity, which includes administrative and supervisory, right? Yes, Your Honor. I'm puzzled by the decision by the A.J. which became the decision of the Board because the A.J. says the issue to be resolved in this appeal is whether the appellant has established his entitlement to FF coverage in a secondary position. Then the A.J. says the appellant's FPI position does not contain a supervisory function. Thus, I find the appellant's FPI position is administrative in nature. Based on this definition, I find the appellant has not established his entitlement to secondary FF coverage in his fire protection inspector position. Now, I find that a little puzzling because I didn't think the question was whether his FPI position was secondary. I thought the question being raised by the appellant was whether his FPI position was primary. But I don't find that the Board ever – I can't find anything in the Board's opinion that addresses the question was his FPI position primary as such. The record seems to say he didn't have enough primary two years, whatever it was. You need to have three years in primary before your secondary counts, right? That's correct, Your Honor. The record seems pretty clear he didn't have it in that first position. Yes, Your Honor. So even if his later position, FPI, was a secondary, qualified secondary position, it wouldn't work, right? That's correct. So the FPI – the only issue that I can understand in this case is whether FPI is a primary position. Is that right? It is our contention, Your Honor. No, is that the issue? That is the issue, yes. Whether the FPI can qualify as a primary position. Yes, Your Honor. The issue is not whether it qualifies as a secondary position. Is that right? That is correct because – That's a yes or no. Yes. That's a yes. Yes. But I don't find anything in the Board that addresses that question. Help me understand that. You're correct, Your Honor. The Board did not address specifically whether this position was a primary firefighting position. So the Board never addresses the only issue before us. Is that right? I'm puzzled. I'm just trying to understand the case. You understand I'm confused. I understand, Your Honor. The Board did address the ultimate question of whether Mr. Keynes qualifies for enhanced retirement benefits. Yes, but you can only get there by deciding whether FPI is a primary position. Right? That is correct, Your Honor. And did they decide that question? They did not. Not in so many terms. The Board did not directly address that question. Then how do you defend the outcome in this case? In two ways. It may well be right that FPI is not a primary. I don't know the merits. I don't think we're here to decide that initially. I thought that's what the Board did. Well, the Board could have ruled on alternative grounds. So maybe if you could just explain to us what you see as the proper outcome, we'll go from there. Well, Your Honor, Mr. Keynes fails to qualify for enhanced retirement benefits under either of the two prongs of the statute. He fails to qualify either as this position fails to qualify because it's not a primary position, and he fails to qualify for enhanced benefits because he did not serve in a primary position for at least three years before being directly transferred to a secondary position. In other words, under either prong of the statute, he fails to qualify. But how is this position not a secondary position? It specifically lists 5% of the duties are going to be firefighting, and then for the past 13 years, 15% of his duties have been firefighting according to an unrebutted affidavit. Why isn't it secondary? It's not secondary, Your Honor, because it does not qualify either as a supervisory or administrative position as those terms are defined in the OPM's regulations. Why not the administrative, which is the one I'm focusing on? Well, Your Honor, in order to qualify as an administrative position, experience as a frontline firefighter or a rigorous firefighter must be a mandatory prerequisite for the position, and rigorous firefighting experience is not listed as a qualification in any of the position descriptions for the FBI position. The position requires that you spend 5% of your time firefighting. Does the agency provide training to people it hires for inspectors if there's not an assumption that these people have had any firefighting experience? Your Honor, the record does not state whether such training is provided, but the position descriptions, and we've attached all of them in the appendix, none of them contain rigorous firefighting as a mandatory prerequisite. And what is the 5%? The 5%, Your Honor, for example, at page 834 of the record, it discusses, it states that the incumbent responds to all emergencies and assists other fire section personnel when there is an emergency requiring his assistance. This could include such duties as dispatcher, handling hose lines and nozzles, and other duties that could be required during an emergency. And the paragraph, this is all within the 5% of duties, goes on to discuss other types of inspection activities that would occur at the scene of a fire, such as taking evidence or collecting evidence or taking photographs. What about Mr. Oddie's point about this 24-hour requirement that's been in existence for 15 years? Well, Your Honor, two points about that. First, Mr. Cain states in his brief that he's only been required to perform up to 50% of firefighting duties within the last two or three years. So that is, those duties have been required only on a temporary basis or intermittent basis. But second, I'm not aware of any place in the record where it discusses a scheduling requirement that's been in place for 15 years or since Mr. Cain has been stationed at Dahlgren. I have not been able to find that evidence in the record. Well, let me go back to the point where I think Judge Plager kind of started with. There's something troubling to me about this case, and I think what it boils down to is the agency, which presumably is in the best position to make a decision about what its employees are required to do and not, decided that he didn't have sufficient primary, but that he did have secondary. So I assume when you all go up to the board, the agency's rep is not disputing the secondary portion, and certainly Mr. Ide isn't necessarily disputing it. He's just asking to be primary. How did the AJ even get the issue? I mean, who gave her, what was the evidentiary record? How did she know what was required and what wasn't if the agency wasn't even making the case that it wasn't secondary? Well, Your Honor, presumably the administrative judge looked at the position descriptions and reviewed the position descriptions that were in place for this position throughout all of the times when Mr. throughout the entire history while Mr. Cain was in the positions and reviewed those, and it appeared to her that the position didn't qualify as a secondary position. And so that was an alternative grounds to find that Mr. Cain was not qualified for enhanced benefits, other than the ground that had been focused upon, which was the fact that he had not been in a primary position, an undisputed primary position, for at least three years. He fell a few months short. And it certainly, rather than focus on the fact that he fell a few months short, and that was the reason why he didn't qualify under the second prong of the statute, the administrative judge focused on the alternative grounds, which were that the position did not qualify as a secondary position. Let's assume the administrative judge is wrong about the secondary position qualification, and let's assume for argument purposes that it clearly is a qualified secondary position. You lose? No, Your Honor. Why not? And that's because Mr. Cain did not occupy a primary position for at least three years before directly transferring to the secondary position. So the question of whether he was in a secondary position for all those years is irrelevant to whether he wins, right? The only way he can win is by saying the FBI was a primary position. Is that correct? The only way, I'm sorry, the only way he can win… The only way he can win, yes. The only way he can win is by a finding that the FBI is a primary position. Do I understand that? That's correct, Your Honor. So the question of whether he was in a secondary position or not on these facts is basically irrelevant. Is that correct? That is correct, Your Honor. Well, I guess I have to challenge your answer in that regard because it seems to me there's another issue in this case, which even if you're dividing the primary, even if you're assuming we reject that the secondary time was actually primary time, which is whether or not his volunteer fire department time can be counted towards the primary if that's what we're left with. And it doesn't seem to me that the A.J. ever reached that issue at all. So there's still, in my view, if we think she was wrong on the secondary, in other words, if we agree with the agency's determination that the second part of his career was a secondary position, we're still left with somebody having to resolve this voluntary fire department time issue, right? That's correct, Your Honor. And that issue was not resolved by the A.J.? That's correct, Your Honor. So what are we to do with that? You expect us to sort of decide it on our own without the benefit of the A.J.'s consideration of that issue? Well, no, Your Honor. The case law of this court establishes that positions, that each position that an employee occupies must separately qualify for benefits in order for those positions to be amalgamated. And because his active firefighting in a volunteer capacity was not a federal position, it cannot qualify independently for enhanced benefits. Doesn't he have to be an employee engaged in that office in order to get primary? Yes, Your Honor. That's precisely correct, Your Honor. So how would the volunteer work fit? It would not fit. It would not count toward credit for rigorous firefighting. In other words, it wouldn't count towards credit for being within a primary position because he was not a federal employee. And therefore, that time cannot be added to the time that he was in the rigorous firefighting position at the beginning of his career. Did you make that argument? Excuse me, I'm sorry. Did you make that argument in your brief? We did, Your Honor. In the case we cite is an unpublished decision from 2007, Lloyd v. Department of Interior. It's toward the end of our brief, Your Honor. We cite that case at page 18 and 21 of the brief, Your Honor. It's not at the very end. Well, Mr. Woodrow, you do agree with me, do you not, that A.J., the board, never addressed the one issue that matters? The board did not address that issue. That is correct, Your Honor. The ultimate decision of the board is correct and substantial evidence in the record does support the board's ultimate decision in terms of Mr. Kane's qualification for enhanced retirement benefits. We respectfully ask that this court affirm the board's decision. All right. Thank you, Mr. Woodrow. Mr. Ide? Not required, but if you would wish, you have a couple minutes. Please. You're welcome. I would point out that the issue here is congressional intent. That's got to override all of your thinking. I certainly overrid everything I was thinking while I was writing the brief and doing the preparation for this event today. Can I help you out a little bit? Yes, Your Honor. I think the one question you have to answer is his last point, which is, does substantial evidence in the record show that he didn't have three years of primary service, regardless of anything else, so that even if the board didn't address that issue, there's only one outcome? That seems to be the thing you need to talk to us about. Your Honor, it's clear that he did not have three years of service in the primary position. We're not contesting that. Our position is that all of the volunteer work and the work as a secondary, as the inspector in the secondary position, should be appended to the two years and ten-plus months that he had towards the three years in the primary job. And it would clearly exceed three years. On top of that, the volunteer work he does, which includes coverage of the satellite of the Dahlgren facility that is in Carroll County, Maryland, across the river from Dahlgren. Do you agree with the government's view that the FBI position is a secondary, a qualified – well, I shouldn't say it's the government's position. Do you agree that the FBI position is a qualified secondary position? I agree with that, and that's what the Navy told Mr. Kane for 20 years, that it was a qualified secondary position. Okay. And it didn't change until Judge Robinson decided that it wasn't even a secondary position. And she did that based on the documentary evidence in the record. There's no question that the work of a FBI inspector involves rigorous firefighting activities for those 24 hours, and Judge Prost is focusing on that. The fact that they're doing – the inspectors are doing that work. They're working as primary firefighters for 24 hours a week at least, if not more. That's 40 percent of their time. So there's no way that they could be doing that job without the experience unless they were trained, and there's nothing in the record – and I'm aware of no information that indicates that they're being trained for that position as a primary firefighter while they're being an inspector. Thank you, Mr. Wrighty. Thank you very much. That concludes our hearing.